UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IRAK ULISES ROSAS,<br>    *Plaintiff*, | §<br>§<br>§ | |
| v. | §<br>§ | CIVIL ACTION NO. 4:24-cv-3489 |
| MARCO A. RUBIO[1] IN HIS OFFICIAL<br>CAPACITY AS SECRETARY OF STATE,<br>    *Defendant*, | §<br>§<br>§<br>§ | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

In October 2019, the United States Department of State revoked Plaintiff's U.S. passport on the basis that he is not a U.S. national because it had discovered a Mexican birth certificate in his name indicating he was born in Mexico City, Mexico.[2]  Pl.'s Ex. 28.  Plaintiff brought an action under 8 U.S.C. 1503(a) seeking a declaratory judgment that he is a U.S. national by virtue of his birth in Freeport, Texas.

The Court conducted a bench trial from April 7, 2026 through April 8, 2026. The Court heard witness testimony, reviewed exhibits admitted into evidence, and analyzed the applicable law.  During the trial, Plaintiff called the following witnesses: Plaintiff Irak Ulises Rosas ("Ulises Rosas"); Maria Rosas, Plaintiff's

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), current Secretary of State Marco A. Rubio is automatically substituted for his predecessor Antony J. Blinken.

[2] The parties have consented to the jurisdiction of this Magistrate Judge for all purposes.  ECF 18.

mother; Antonio Leija ("Leija"), a neighbor who worked with Plaintiff's father; Consuelo Pantoja de Sugars ("Sugars"), a family friend; and Elizabeth Gonzalez ("Gonzalez"), a neighbor and daughter of the Rosas family's landlord.  Defendant did not call any witnesses.  Throughout and after the trial, the Court determined the witnesses' credibility and the probative value of the testimony and exhibits.  After a thorough review of the testimony and exhibits, the Court finds the following facts to be proven by a preponderance of the evidence and makes the following conclusions of law.[3]

## I.      AGREED FINDINGS OF FACT

1. The Court finds the facts in this paragraph to be established in accordance with the Parties' agreed Proposed Findings of Fact (ECF 42; ECF 44):

1.1 Plaintiff Ulises Rosas ("Ulises Rosas") was born on January 9, 1977.

1.2 Plaintiff does not allege that he has been naturalized, but that he is a United States citizen only based on his birth in the United States.

1.3 Plaintiff has a Texas birth certificate stating that he was born on January 9, 1977, in Freeport, Texas.

1.4 Plaintiff's Texas birth certificate is signed by Beatriz Chavez, who is listed as a midwife on the birth certificate.

---

[3] To the extent any findings of fact herein are more properly characterized as conclusions of law they are deemed to be conclusions of law.  To the extent any conclusions of law herein are more properly characterized as findings of fact they are deemed to be findings of fact.

1.5 Plaintiff's parents are Maria Rosas (née Maria de los Angeles Escuadra) and Humberto Rosas.

1.6 Plaintiff is the second-oldest of six children.

1.7 Plaintiff's oldest sibling, Donovan Rosas, was purportedly born in 1975 in Freeport, Texas by midwife Beatriz Chavez.

1.8 Plaintiff's and Donovan's Texas birth certificates were filed on March 7, 1985.

1.9 Plaintiff's younger brothers, Irving Rosas and Jacob Rosas, were born in Texas hospitals in 1984 and 1987 respectively.

## II.    THE COURT'S FINDINGS OF FACT

2.  Plaintiff's parents[4] began renting a house located at 324 N. Ave D, Freeport, Texas in 1975.  Leija, 04/07/2026 at 10:03:50, 10:13:56-15:16 AM; Gonzalez, 04/07/2026 at 10:40:00, 10:53:20 AM; Maria Rosas, 04/07/2026 at 11:12:22, 11:59:56 AM.

3.  Plaintiff's parents rented the house from Gonzalez's mother, Consuelo Garcia. Gonzalez, 04/07/2026 at 10:51:30 AM; Maria Rosas, 04/07/2026 at 12:00:04 PM.

---

[4] Maria Rosas testified that Humberto Rosas has suffered health issues and is now disabled and living in a nursing home.  Maria Rosas, 04/07/2026 at 11:12:14 AM.

3

4. In 1975, Maria Rosas became pregnant with her first child. Leija, 04/07/2026 at 10:07:00; Sugars, 04/07/2026 at 10:25:53 AM; Maria Rosas, 04/07/2026 at 11:12:30 AM.

5. In 1975, Maria Rosas met and befriended Beatriz Chavez.  Maria Rosas, 04/07/2026 at 12:02:40-03:45 PM; Leija, 04/07/2026 at 10:10:38.

6. Maria Rosas delivered her first child, Donovan Rosas, on December 12, 1975. Maria Rosas, 04/07/2026 at 11:12:44 AM; Pl.'s Ex. 5.

7. Beatriz Chavez assisted Maria Rosas with Donovan's birth.  Maria Rosas, 04/07/2026 at 11:12:44 AM; Gonzalez, 04/07/2026 at 10:44:00 AM; Pl.'s Ex. 5.

8. In 1976, Maria Rosas became pregnant with her second child, Plaintiff Ulises Rosas.  Maria Rosas, 04/07/2026 at 11:23:00 AM; Gonzalez, 04/07/2026 at 10:46:09 AM; Sugars, 04/07/2026 at 10:28:24 AM; Leija, 04/07/2026 at 10:07:23 AM.

9. When Maria Rosas went into labor, Humberto Rosas called Beatriz Chavez, who lived nearby and she came to assist with the delivery of Plaintiff at 324 N. Ave. D, Freeport, Texas, in the early hours of January 9, 1977.  Maria Rosas, 04/07/2026 at 12:07:45, 12:10:05-12:12:44 PM.  Chavez stayed with Maria Rosas until around 3:00 AM.  *Id*.

4

10. Maria Rosas, Humberto Rosas, Donovan Rosas, and Beatriz Chavez were present at 324 N. Ave. D, Freeport, Texas, for the birth of Plaintiff. Maria Rosas, 04/07/2026 at 12:12:50 PM.

11. At the time of Plaintiff's birth, the Rosas family (Humberto, Maria, and Donovan) resided at 324 N. Ave. D, Freeport, Texas. Maria Rosas, 04/07/2026 at 11:23:16 AM; Gonzalez, 04/07/2026 at 10:46:15 AM; Sugars, 04/07/2026 at 10:28:07 AM; Leija, 04/07/2026 at 10:08:47 AM.

12. Plaintiff was born at home in Freeport, Texas on January 9, 1977. Maria Rosas, 04/07/2026 at 11:11:00 AM; Pl.'s Ex. 3.

13. Maria Rosas was 18 years old at the time of Plaintiff's birth. Maria Rosas, 04/07/2026 at 12:21:24 PM; Pl.'s Ex. 3.

14. Shortly after his birth, Plaintiff was vaccinated at a community clinic in Freeport, Texas. Maria Rosas, 04/07/2026 at 12:33:44-12:35:30 PM.

15. Approximately two months after Plaintiff was born on January 9, 1977, the Rosas family (Maria, Humberto, Donovan, and Plaintiff) traveled by bus from Freeport, Texas to Mexico City so that Maria's parents could meet the baby. Maria Rosas, 04/07/2026 at 11:29:13-32:28 AM.

16. Maria explained that during that visit, her mother told her to register a Mexican birth certificate for Plaintiff so that he could potentially avoid future conscription in the United States. Maria Rosas, 04/07/2026 at 11:24:27 AM.

Maria recalled her mother provided a form for the registration, which Maria filled out, but she could not remember whether she and Humberto went to the government office to file the Mexican birth certificate or whether her mother did.  Maria Rosas, 04/07/2026 at 11:25:45 AM, 12:15:11 PM.

17. There is a Mexican birth certificate that identifies Plaintiff by name and gives his place of birth as Mexico City, Mexico. Def.'s Ex. 1.  It was registered on March 9, 1977, two months after Plaintiff's birth.  *Id.*  The birth certificate contains Plaintiff's parents' information and lists his father as an employee of the Mexican federal government.  *Id.*  The document bears the purported signatures of Plaintiff's parents. *Id.*

18. Maria testified that she was unable to say whether it was her signature on the birth certificate but mentioned that it did not look like her writing.  Maria Rosas, 04/07/2026 at 11:28:39 AM. Maria further noted that while some of the information on the Mexican birth certificate was correct (e.g., her name and age, Humberto's name and age), other information was incorrect. Maria Rosas, 04/07/2026 at 11:28:45 AM; Def.'s Ex. 1.  Specifically, she testified that the address listed for her and Humberto was not theirs and she did not recognize it, and she also explained that Humberto never worked for the Mexican government.  *Id.*; Maria Rosas, 04/07/2026 at 11:58:40 AM.

19. In 1985, Maria Rosas registered Plaintiff's and Donovan's births in Texas after the principal of their school, Mr. Williams, told her Plaintiff and Donovan needed birth certificates to remain enrolled.    Maria Rosas, 04/07/2026 at 11:46:00-47:50, 11:50:00 AM, 12:40:08 PM.    Maria, accompanied by Beatriz Chavez, went to a Texas state court to record their births. *Id.* at 11:48:00-49:12. Maria testified she used Plaintiff's vaccination records as proof.    *Id.*    Chavez signed Plaintiff's and Donovan's birth certificates, which identify her as a midwife.  Pl.'s Ex. 3, 5; Maria Rosas, 04/07/2026 at 11:49:29 AM.

20. The record contains no allegation or evidence that Beatriz Chavez at any time was suspected of, or investigated for, falsifying birth records.

21. Plaintiff resided at 324 N. Ave. D, Freeport, Texas from birth until the middle of fourth grade.  Maria Rosas, 04/07/2026 at 12:02:00 PM; Gonzalez, 04/07/2026 at 10:48:00 AM; Ulises Rosas, 04/08/2026 at 10:24:00 AM.  The Rosas family briefly lived at 315 N. Ave. D while repairs were done at 324 N. Ave. D.  Ulises Rosas, 04/08/2026 at 10:27:15 AM.

22. When Plaintiff was in fourth grade, he moved with his family to 1803 N. Ave. G, Freeport, Texas.  Ulises Rosas, 04/08/2026 at 10:24:00 AM.

23. Throughout his childhood, Plaintiff and his family attended El Calvario Baptist Church in Freeport, Texas.  Ulises Rosas, 04/08/2026 at 10:33:00-

34:49 AM.  Plaintiff was baptized at the church when he was 10 years old in accordance with the sect's practice of only baptizing those who have reached an age of accountability.  Maria Rosas, 04/07/2026 at 11:41:09-42:30 AM; Ulises Rosas, 04/08/2026 at 10:34:55-35:30 AM; Pl.'s Ex. 10.

24. Plaintiff attended Velasco Elementary School in Freeport, Texas from 1983 to 1986.  Maria Rosas, 04/07/2026 at 11:36:52 AM; Gonzalez, 04/07/2026 at 10:56:30 AM; Ulises Rosas, 04/08/2026 at 10:26:00, 10:35:00-10:36:16 AM; Pl.'s Ex. 6, 11, 12. He continued to attend public schools in Freeport, Texas until he graduated from high school in 1995.  Maria Rosas, 04/07/2026 at 11:43:15 AM; Ulises Rosas, 04/08/2026 at 10:27:02 AM; Pl.'s Ex. 11, 12, 13, 14.

25. Plaintiff then attended and graduated from Stanford University.  Ulises Rosas, 04/08/2026 at 10:17:00 AM; Maria Rosas, 04/07/2026 at 11:43:00-44:30 AM.

26. In 2007, Plaintiff married his wife, Maureen Huffman, a U.S. citizen by birth. Ulises Rosas, 04/08/2026 at 10:18:00, 10:37:30 AM; Pl.'s Ex. 19.

27. Plaintiff has never attempted to obtain permanent residency or naturalize as the spouse of a U.S. citizen. Ulises Rosas, 04/08/2026 at 10:38:45-39:33 AM.

28. Plaintiff and his wife have three U.S. citizen children born in Texas in 2010 and 2013.  Ulises Rosas, 04/08/2026 at 10:39:30-10:41:14 AM; Pl.'s Ex. 22,

23, 24. The birth certificates of these children list Plaintiff's place of birth as Texas. Pl.'s Ex. 22, 23, 24.

29. The U.S. Department of State issued Plaintiff a passport in 2001 based on his Texas birth certificate. Pl.'s Ex. 28; Ulises Rosas, 04/08/2026 at 10:42:30-47:52 AM. Plaintiff successfully renewed the passport in 2011. *Id.*; Pl.'s Ex. 26, 28.

30. U.S. Customs and Border Patrol, an agency of the Department of Homeland Security, previously enrolled Plaintiff in its Global Entry Trusted Traveler Program, the eligibility for which was partly based on Plaintiff's U.S. citizenship. Pl.'s Ex. 25; Ulises Rosas, 04/08/2026 at 10:49:00-51:47 AM.

31. The Transportation Security Administration, an agency of the Department of Homeland Security, previously granted Plaintiff a Transportation Worker Identification Credential ("TWIC"). Pl.'s Ex. 27; Ulises Rosas, 04/08/2026 at 10:47:00-48:56 AM.

32. On October 2, 2019, the U.S. Department of State revoked Plaintiff's passport on the grounds that he is not a U.S. national due to the existence of a Mexican birth certificate listing his birthplace as Mexico City, Mexico. Pl.'s Ex. 28.

## III.   CONCLUSIONS OF LAW

### A. Applicable Standards.

1. Title 8 U.S.C. § 1503(a) allows any person denied a right or privilege by a department or independent agency of the United States on the basis that he or she is not a national to file a declaratory judgment for *de novo* determination that he or she is a national of the United States.  8 U.S.C. § 1503(a); *Vance v. Terrazas*, 444 U.S. 252, 256 (1980) (explaining determination under § 1503 is *de novo*).

2. There are "'two sources of citizenship, and two only: birth and naturalization.'" *Miller v. Albright*, 523 U.S. 420, 423 (1998) (quoting *United States v. Wong Kim Ark,* 169 U.S. 649, 702 (1898)).  "[T]he Fourteenth Amendment guarantees that every person 'born in the United States, and subject to the jurisdiction thereof, becomes at once a citizen of the United States, and needs no naturalization.'" *Id.* at 423-24 (quoting *Wong Kim Ark*, 169 U.S. at 702).  "The Court may not grant citizenship out of equity or in the interests of justice." *Garcia v. Clinton*, 915 F. Supp. 2d 831, 834 (S.D. Tex. 2012), *aff'd sub nom. Garcia v. Kerry*, 557 F. App'x 304 (5th Cir. 2014).

3. "In a § 1503(a) action, the plaintiff bears the burden of proving his citizenship by a preponderance of the evidence." *Esparza v. Rubio*, No. 25-40219, 2026 WL 625925, at *3 (5th Cir. Mar. 5, 2026) (citing *De Vargas v. Brownell*, 251 F.2d 869, 870–71 (5th Cir. 1958)).  *See also, e.g., Solis v. Rubio*, No. 7:22-

CV-232, 2025 WL 779693, at *6 (S.D. Tex. Mar. 12, 2025) (noting plaintiff bears the burden of proving birth in the U.S. where it forms the basis for his § 1503 claim). To prove a fact by preponderance of the evidence means showing the existence of the fact is more likely than not. *Matter of Briscoe Enters., Ltd., II*, 994 F.2d 1160, 1164 (5th Cir. 1993); *Herman & MacLean v. Huddleston*, 459 U.S. 375, 390 (1983).

4.  There is no burden-shifting in a § 1503 proceeding: "[t]he burden does not shift to the government to either produce evidence demonstrating that the plaintiff was born outside the United States or discrediting all of the plaintiff's evidence after [he or she] has made a *prima facie* showing of United States citizenship." *Cobos v. Kerry*, No. CIV.A. H-13-02897, 2015 WL 3965660, at *6 (S.D. Tex. June 30, 2015). *See also Sanchez v. Kerry*, No. 4:11-CV-02084, 2014 WL 2932275, at *3 (S.D. Tex. June 27, 2014), *aff'd,* 648 F. App'x 386 (5th Cir. 2015).

5.  The Court weighs the evidence and determines the credibility of witnesses. FED. R. CIV. P. 52(a); *Garcia*, 915 F. Supp. 2d at 835. In considering the testimony, the Court takes statements from interested witnesses "with a grain of salt." *De Vargas*, 251 F.2d at 871. Interested witnesses include relatives. *Garcia*, 915 F. Supp. 2d at 835. Friends of the plaintiff or the plaintiff's family could be interested or disinterested witnesses depending on the

circumstances.  *Compare Salgado*, 573 F. Supp. 3d 573 F. Supp. 3d 1144, 1150 (S.D. Tex. 2021) (indicating that a prior or continuing friendship with a family friend would have potentially made a witness interested), *with Hernandez v. Blinken*, No. 1:22-CV-060, 2023 WL 12253411, at *4 (S.D. Tex. Sept. 5, 2023) (describing friend of plaintiff's mother as disinterested). Nevertheless, credibility determinations are the domain of the trial court and "must not be set aside unless clearly erroneous."  FED. R. CIV. P. 52(a)(6).

6. A contemporaneously filed birth certificate is "almost conclusive evidence of birth."  *Sanchez*, 2014 WL 2932275, at *4 (internal quotation marks omitted). "The Fifth Circuit has not defined the boundaries for a contemporaneously-filed birth certificate."  *Solis*, 2025 WL 779693, at *3.  Generally, a birth certificate registered within two weeks of birth is considered contemporaneously filed.[5]  *See, e.g.*, *Candela-Rios v. Lynch*, No. SA-16-MC-00220-JWP, 2017 WL 11046200, at *10, *14 (W.D. Tex. Jan. 9, 2017) (three days is contemporaneous), *aff'd sub nom. Candela-Rios v. Sessions*, 737 F. App'x 187 (5th Cir. 2018); *Cobos*, 2015 WL 3965660, at *5 (eight days); *Garcia v. Pompeo*, No. 1:18-CV-59, 2019 WL 13164664, at *4 (S.D. Tex.

---

[5] Courts that have found larger time gaps to be contemporaneous relied on evidence demonstrating "the registration practices customary in Texas and in Mexico, respectively, at the time of [p]laintiff's birth; a birth certificate was found to have been filed contemporaneously if it was filed according to the standard practices of the time and place."  *Trevino v. Pompeo*, No. 5:16-CV-139, 2019 WL 13261429, at *5 (S.D. Tex. Sept. 13, 2019).

Dec. 2, 2019) (11 days); *Solis*, 2025 WL 779693, at *5 (10 and 20 days); *Villafranca v. Blinken*, No. 1:19-CV-173, 2022 WL 1210762, at *6 (S.D. Tex. Apr. 25, 2022) (one week and two weeks).

7. "A contemporaneously filed foreign birth record creates a presumption of alienage," but this presumption is rebuttable. *Sanchez*, 2014 WL 2932275, at *4. "A foreign birth certificate that contains accurate corroborating details, such as names and addresses, holds greater credibility." *Garcia v. Limon*, 542 F. Supp. 3d 577, 583 (S.D. Tex. 2021).

8. Similarly, a Texas birth certificate registered according to state law and certified by the state registrar "is prima facie evidence of the facts stated in the record." TEX. HEALTH & SAFETY CODE § 191.052. As with the presumption of alienage, the prima facie evidence in a Texas birth certificate is rebuttable. *Cobos*, 2015 WL 3965660, at *7. A Texas birth certificate registered between four and 15 years after birth is one type of delayed birth certificate under Texas law. *See* TEX. HEALTH & SAFETY CODE § 192.024, 192.025.

9. A delayed birth certificate is given less evidentiary weight than a contemporaneously filed one, and as between two delayed birth certificates, the one closer in time to the birth is afforded more weight. *De La Cruz Vargas v. Blinken*, 569 F. Supp. 3d 556, 562 (S.D. Tex. 2021).

10. Along with birth certificates, the Court may also consider testimony, "[b]aptismal certificates, medical records, and school records[,]" which "constitute evidence of an individual's birthplace." *Solis*, 2025 WL 779693, at *4. Some courts describe these forms of evidence as secondary evidence, as opposed to birth certificates—the sole form of primary evidence, based on the U.S. Department of State regulations governing the processing of passport applications. *See id.*; 22 C.F.R. § 51.42.

11. Failure to pursue naturalization is circumstantial evidence in favor of U.S. birth. *See Salgado*, 573 F. Supp. 3d at 1150 (explaining that foregoing naturalization, including where a parent did not assist or prompt a plaintiff to naturalize, is evidence of U.S. birth).

12. A plaintiff's "lifelong and consistent representations of U.S. citizenship" by birth bolsters his or her credibility and can provide additional circumstantial evidence. *Trevino*, 2019 WL 13261429, at *7.

13. The Global Entry program "is a voluntary international trusted traveler program consisting of an integrated passenger processing system that facilitates the movement of pre-approved, low-risk, air travelers by providing dedicated CBP processing at specified airports. In order to participate, a person must meet the eligibility requirements specified in this section, apply

in advance, undergo vetting by CBP, and be accepted into the program." 8 C.F.R. § 235.12(a).

14. "TWIC cards are biometric credentials issued by the TSA to workers who require unescorted access to secure areas of ports, vessels, and outer continental shelf facilities." *Boyer v. Freeman*, No. 1:11-CV-21 AJT/JFA, 2011 WL 8129472, at *1 (E.D. Va. July 14, 2011). The TSA grants the credentials after conducting a background check, and immigration violations can be disqualifying. *See* 46 U.S.C. § 70105.

15. Finally, the Parties disagree whether the Court must resolve all doubts regarding citizenship in favor of the United States. ECF 43 at 8. Surveying the § 1503 caselaw from district courts in this Circuit, the decisions that include that language cite either to *Bustamante-Barrera v. Gonzales*, 447 F.3d 388 (5th Cir. 2006) or *Gonzalez-Segura v. Sessions*, 882 F.3d 127 (5th Cir. 2018).[6] *Bustamante-Barrera* and *Gonzalez-Segura* are not § 1503 cases.

---

[6] See, e.g., *De La Cruz v. Clinton*, No. A-11-CV-675-AWA, 2012 WL 1941373, at *2 (W.D. Tex. May 29, 2012) (citing *Bustamante-Barrera*), *Garcia v. Clinton*, 915 F. Supp. 2d 831, 833 (S.D. Tex. 2012) (citing *Bustamante-Barrera*), aff'd sub nom. *Garcia v. Kerry*, 557 F. App'x 304 (5th Cir. 2014) (not addressing the in-favor-of-the-Unites-States issue); *Sanchez v. Kerry*, No. 4:11-CV-02084, 2014 WL 2932275, at *4 (S.D. Tex. June 27, 2014) (citing *Bustamante-Barrera*), aff'd, 648 F. App'x 386 (5th Cir. 2015) (not addressing the in-favor-of-the-Unites-States issue); *Salgado v. Blinken*, 573 F. Supp. 3d 1144, 1149 (S.D. Tex. 2021) (citing *Bustamante-Barrera*); *Reyna v. Blinken*, No. 1:20-CV-089, 2022 WL 2829527, at *4 (S.D. Tex. July 20, 2022) (citing *Gonzalez-Segura*); *Garcia v. Pompeo*, No. 1:18-CV-59, 2019 WL 13164664, at *3 (S.D. Tex. Dec. 2, 2019) (citing *Gonzalez-Segura*); *Padron v. Pompeo*, No. 1:18-CV-186, 2020 WL 832101, at *2 (S.D. Tex. Feb. 20, 2020) (citing *Gonzalez-Segura*).

Those cases involved judicial review of administrative orders of removal under 8 U.S.C. § 1252 in which both petitioners/plaintiffs argued they were naturalized U.S. citizens.  *See Gonzalez-Segura*, 882 F.3d at 129–30; *Bustamante-Barrera*, 447 F.3d at 390–93.  Both decisions cite *Berenyi v. Dist. Dir., Immigr. & Naturalization Serv.*, 385 U.S. 630 (1967) for the proposition that all doubts must be resolved in favor of the United States and against those *seeking* citizenship and apply that standard when determining whether plaintiffs fulfilled all naturalization requirements set by Congress.  *Gonzalez-Segura*, 882 F.3d at 131; *Bustamante-Barrera*, 447 F.3d at 394–95.  Like *Bustamante-Barrera* and *Gonzalez-Segura*, *Berenyi* involves an alien whose naturalization application was denied and then sought review of the adverse decision.  *Berenyi*, 385 U.S. at 632-35.  In *Berenyi* the Supreme Court wrote:

> When the Government seeks to strip a person of citizenship already acquired, or deport a resident alien and send him from our shores, it carries the heavy burden of proving its case by clear, unequivocal, and convincing evidence. But when an alien seeks to obtain the privileges and benefits of citizenship, the shoe is on the other foot. He is the moving party, affirmatively asking the Government to endow him with all the advantages of citizenship. Because that status, once granted, cannot lightly be taken away, the Government has a strong and legitimate interest in ensuring that only qualified persons are granted citizenship. For these reasons, it has been universally accepted that the burden is on the alien applicant to show his eligibility for citizenship in every respect. This Court has often stated that doubts should be resolved in favor of the United States and against the claimant.

16

385 U.S. at 636–37 (internal quotation marks and citations omitted).  Under *Berenyi*, in naturalization cases where citizenship is *sought*, doubts should be resolved in favor of the United States because "judicial insistence on strict compliance with the statutory conditions precedent to naturalization is simply an acknowledgment of the fact that Congress alone has the constitutional authority to prescribe rules for naturalization."  *Fedorenko v. United States*, 449 U.S. 490, 506 (1981).

Unlike a plaintiff seeking citizenship by naturalization, Plaintiff seeks a declaratory judgment recognizing his existing birthright citizenship.  He is not, nor has he ever been, an applicant for citizenship like the plaintiffs in *Bustamante-Barrera*, *Gonzalez-Segura*, and *Berenyi*, nor has the government, in revoking his passport, revoked his citizenship.  *See* 8 U.S.C. 1504(a) ("The cancellation under this section of any document purporting to show the citizenship status of the person to whom it was issued shall affect only the document and not the citizenship status of the person in whose name the document was issued.").  Judgment in favor of Plaintiff here does not confer citizenship, it merely recognizes the existence of his U.S. citizenship by birth in the face of a denial of a privilege that flows from citizenship.  *See* 8 U.S.C. § 1503(a).  Therefore, the Court concludes the standard applied by the Supreme Court and Fifth Circuit to those *seeking citizenship* does not apply

17

in a § 1503 action, which is available only to individuals not in removal proceedings, when the plaintiff merely seeks official confirmation of his U.S. birthright citizenship. *See Moran v. Mayorkas*, No. 21-CV-2323 (SRN/ECW), 2024 WL 1653742, at *7 (D. Minn. Apr. 17, 2024) (finding the *Berenyi* holding inapposite to a § 1503 action asserting citizenship by birth, not naturalization). This conclusion aligns with the undisputed "preponderance of the evidence" burden of proof a plaintiff in a §1503 action bears.

**B. Analysis.**

As the Court noted in its order denying summary judgment, this is a case of dueling birth certificates. ECF 31 at 9-10. The Court first addresses the birth certificates and the weight they should be afforded as in this case. The Court then examines the testimonial, secondary documentary, and circumstantial evidence of Plaintiff's U.S. birth.

### i. Neither birth certificate creates a presumption as to Plaintiff's place of birth.

Neither birth certificate creates a presumption as to Plaintiff's place of birth because neither was contemporaneously filed. The Texas birth certificate was filed eight years after Plaintiff's birth, which makes it delayed under Texas law. *See* TEX. HEALTH & SAFETY CODE § 191.024. The Mexican birth certificate is a closer case, but without expert testimony or evidence of particular filing circumstances that

18

renders the two-month delay contemporaneous, the Court finds it was not contemporaneously filed. Therefore, neither birth certificate creates a rebuttable presumption regarding Plaintiff's birthplace. Even so, the Court does place more evidentiary weight on the Mexican birth certificate, because it was filed significantly closer in time to Plaintiff's birth.

### ii. Plaintiff's evidence undermined the credibility of the Mexican birth certificate.

Maria is an interested witness, so the Court takes her testimony with the required "grain of salt." However, the Court finds the most important aspects of her testimony to be credible. It is credible that Maria, a teenaged mother of two young children who lacked a high school education and lived far from any family, would have heeded her mother's dubious advice to falsely register Plaintiff's birth. The reason given for registering Plaintiff, to avoid the draft, may not be entirely rational, but it is not incredible considering Maria and her mother's lack of education and the historical context: the Vietnam War (and memories of the U.S. draft) had ended only a few years prior. The Court cannot determine whether Maria signed the certificate, but she testified the document contained incorrect information (the address, Humberto Rosas' occupation), undermining it. Defendant did not rebut this testimony and provided no evidence to explain the circumstances surrounding the registration of the Mexican birth certificate or the inaccurate information contained in it.

19

### iii. Plaintiff's evidence bolstered the credibility of his Texas birth certificate.

Maria testified that she did not know she needed to register the births of Plaintiff or Donovan with the State of Texas due to her lack of sophistication and English. She explained she never had a reason to register them because she enrolled them in school and vaccinated them without birth certificates. Maria Rosas, 04/07/2026 at 11:49:00 AM. She only registered them after prompting by Mr. Williams, as noted in the Court's factual findings.

The Court finds this explanation credible. Plaintiff's first-grade class picture and school records indicate he was attending Velasco Elementary School in 1983 and 1984, before the Texas birth certificate was registered in 1985. Pl.'s Ex. 6, 11. The same school picture confirms Mr. Williams as the principal at Velasco around that time. Pl.'s Ex. 6. The fact the brothers' birth certificates were filed the same day reinforces the explanation that Maria was unaware of the need to record birth certificates for her sons until she was told by Mr. Williams that they needed them. These details make Maria's testimony more credible, even though she is an interested witness, and bolster the evidentiary weight of the Texas birth certificate.

### iv. The witness testimony, secondary evidence, and circumstantial evidence further demonstrate Plaintiff was born at home in Freeport in 1977.

Defendant argues the lack of documentary evidence of Plaintiff's birth and his early years indicates he was born in Mexico. ECF 42 ¶¶ 54-60. To the contrary, the

20

dearth of documentary evidence such as utility bills, mortgage documents, leases, and photographs is explained by the Rosa family's precarious economic situation and the passage of time. Ulises Rosas, 04/08/2026 at 10:24:30, 10:30:00 AM; Maria Rosas, 04/07/2026 at 11:18:45-19:52 AM.

Plaintiff has provided documentary evidence supporting the fact that he spent his childhood in Freeport, Texas. For example, Maria testified to the photos which show Plaintiff at around age two, dressed up for Halloween in Freeport, Texas, and at around age five standing in front of the distinctive curtains Maria remembered from the 324 N. Ave. D house. Pl.'s Ex. 1, 2; Maria Rosas, 04/07/2026 at 11:17:00, 11:20:21-22:23 AM. The school photo and records show he attended Freeport public schools through high school. Pl.'s Ex. 6, 11, 12, 13, 14.

The witnesses Leija, Gonzalez, and Sugars all corroborate Plaintiff's narrative. Leija testified that he met the Rosas family when they arrived in Freeport, Texas around 1975, which he noted at the time because of the small Hispanic population in the area. Leija, 04/07/2026 at 10:03:22, 10:09:30, 10:13:56 AM. Leija lived across the street from the Rosas family and worked with Humberto. *Id.* at 10:07:08 AM. Leija recalled Maria Rosas being pregnant in Freeport in 1976, which he remembered because his wife was pregnant at the same time with his daughter, who was born around the same time as Plaintiff. *Id.* at 10:06:02-07:52 AM. He

21

testified that he was not physically present at Plaintiff's birth, but he saw Plaintiff three or four days later when he visited the Rosas home. *Id*. at 10:16:28 AM.

Sugars lived in Houston at the time and met Maria and Humberto Rosas at a flea market in Pearland, Texas in 1975. Sugars, 04/07/2026, at 10:22:02, 10:23:30 AM. Sugars explained her husband became fishing buddies with Humberto. *Id.* at 10:25:17 AM. Sugars herself was not close to the Rosas family, but she and her husband visited them about twice a year. *Id.* at 10:26:30 AM. She recalled visiting for Christmas 1976 and seeing Maria had a baby or small child *and* was very pregnant, correlating with Donovan (born December 1975) and Plaintiff (born January 1977). *Id.* at 10:27:44 AM. Sugars testified that she saw Plaintiff for the first time when she visited the Rosas family one week after Plaintiff's birth. *Id.* at 10:33:05 AM.

Gonzalez testified that she met Maria Rosas around 1975, when the Rosas family began renting the house at 324 N. Ave. D in Freeport from Gonzalez's mother. Gonzalez, 04/07/2026 at 10:40:00 AM. At the time, she was not close to the Rosas family but would see them occasionally because she lived across the street. Gonzalez, 04/07/2026 at 10:47:20 AM. Gonzalez testified that she believed Beatriz Chavez helped Maria Rosas give birth to Plaintiff at home. *Id.* at 10:49:00 AM. Gonzalez was not present at Plaintiff's birth, but she recalled seeing Ulises for the first time a few months later. *Id.* at 10:57:30 AM. Gonzalez married in late 1976

and remembered that Plaintiff was born shortly after she got married. *Id.* at 10:42:33, 10:46:40 AM.

None of these witnesses are interested because they have no apparent relationship with Plaintiff, and even if they were interested, the Court would still find their testimony generally credible.  Each witness provided small details that connected their testimony to the timeline of events and reinforced their credibility: the link between Leija's daughter and Plaintiff, Sugars' Christmas visit, and Gonzalez's marriage.  Although there were slight inconsistencies in the testimony, these are easily explained by the fact the events in question occurred nearly 50 years ago.  Rather than undercut the witnesses' credibility, the minor inconsistencies showed they were forthcoming and had not been coached into a particular narrative.

The circumstantial evidence also demonstrates that Plaintiff is a U.S. citizen by birth.  Assuming, *arguendo*, that Plaintiff was not born in the U.S., he could have applied for permanent residency or otherwise sought to alter his immigration status when he married his U.S. citizen wife.  Pl.'s Ex. 19.  Even if Plaintiff erroneously believed he was a citizen, Maria could have informed him that he was actually born in Mexico, as the government contends, and urged him to seek immigration relief upon marriage.  The fact Plaintiff forwent this relief is evidence of his U.S. citizenship by birth.  Plaintiff has also *voluntarily* subjected his citizenship and the validity of his Texas birth certificate to background checks and other U.S.

government scrutiny when he applied for passports, enrolled in the Global Entry program, and sought a TWIC card—all of which he successfully did prior to October 2019. Pl.'s Ex. 25, 26, 27, 28. If there were doubt as to his citizenship status, he would have been less likely to do so. Over the course of Plaintiff's life, he has consistently represented himself as a U.S. citizen by birth, in line with his reputation amongst the community in Freeport. Ulises Rosas, 04/08/2026 at 10:57:00-58:11 AM; Leija, 04/07/2026, 10:12:30 AM; Sugars, 04/07/2026 at 10:29:00 AM; Gonzalez, 04/07/2026 at 10:48:50 AM.

Even were the Court were to apply the *Berenyi* standard and resolve all doubts in favor of the United States, the Court finds that Plaintiff has met his burden to demonstrate by a preponderance of the evidence that he was born in the United States. *See Limon*, 542 F. Supp. 3d at 582 n.4 (highlighting debate over whether all doubts must be resolved in favor of the U.S. but not reaching the question because "the Court would reach the same conclusion even if it resolved all doubts in favor of the United States and against Ovidio."). Additionally, the doubt-goes-to-the-U.S. requirement must, if applicable, be understood to mean that where evidence on a certain issue is of equal weight, the tie should go in favor of the government, which means the requirement is subsumed by the preponderance of the evidence standard. *See Berenyi*, 385 U.S. at 642–43 (Douglas, J., dissenting).

## IV.  CONCLUSION

Plaintiff Irak Ulises Rosas has met his burden of proof to establish that he is a national of the United States by birth. The Court will issue a final declaratory judgment in favor of Plaintiff by separate order.

Signed on April 21, 2026, at Houston, Texas.

Christina A. Bryan
United States Magistrate Judge